IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.                                                                  **Crim. No. 16-4358 MV**

**MATHIAS MORA,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Mathias Mora's Motion to Reconsider Court's Denial of Defendant's Motion to Suppress. [Doc. 65]. The government opposes the motion. [Doc. 67]. Based upon the pleadings of the parties, the facts of this case and applicable law, Mr. Mora's motion is hereby denied.

### I. Background

Mr. Mora has been charged with seven counts of transporting illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and one count of felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The charges arise from an October 27, 2016, incident which started when agents from the Department of Homeland Security ("HSI") in Albuquerque received a call from Bernalillo County Sheriff's Office ("BCSO") task force officers. The task force officers had fielded a call from a person reporting a semi-truck that was parked behind the Albertsons Market at the intersection of Rio Bravo and Isleta. The caller had seen between 30 and 60 people exiting the back of the semi-truck and walking around the parking lot. BCSO and HSI agents drove to the Albertsons, where they found 14 undocumented immigrants in the area. The semi-truck, however, was gone.

Agents fanned out, searching for the missing vehicle. Shortly thereafter, it was located in the parking lot of the Walmart at the intersection of Coors and Rio Bravo. The cab was locked, but the rear trailer doors were not. Agents opened the doors of the trailer and found that it was empty except for a Sure Fine vegetable oil bottle filled with a yellow substance that smelled like urine. Based on the statement of the eyewitness and the evidence at the scene, agents believed that some of the people who had been inside the trailer were missing. Agents were able to determine from the license plate and the placards on the semi-truck that the truck belonged to Mr. Mora and the trailer belonged to Swingline Transport.

Surveillance video from the Walmart was obtained. It showed the semi-truck pulling into the Walmart parking lot and parking. An individual later identified as Mr. Mora then emerged from the semi-truck, walked through the parking lot, and entered the store. Video from inside the store showed Mr. Mora picking up a 12-pack of Dos Equis beer, purchasing the beer and a package of tortillas, exiting the store, and walking toward the tractor-trailer before being picked up by a car.

Based on information provided by Swingline Transport, HSI obtained Mr. Mora's home address and dispatched agents to his home. Shortly thereafter, Mr. and Mrs. Mora arrived home in a car that appeared to be the same car seen picking the individual up in the Walmart parking lot. The agents arrested Mr. Mora and detained Mrs. Mora. Mrs. Mora declined permission to search the house. Agents made a decision to conduct a sweep of the house for both security and humanitarian reasons. During the three-minute sweep, agents observed ammunition boxes and what appeared to be a gun safe. Later in the day, agents obtained and executed search warrants for the house and the semi-trailer. At the house, they found, *inter alia*, guns and ammunition.

In support of his Motion to Suppress the gun and ammunition, Defendant asserted, *inter alia*, that the "protective sweep" of his house was unconstitutional and, therefore, any information gathered during the sweep could not be used to support the search warrant applications, that the affidavits submitted in support of the search warrants did not establish probable cause to search his house or trailer, and that any evidence seized from Defendant, including his post-arrest statements, must be suppressed as fruits of the poisonous tree. [Doc. 21].

Sitting by designation, United States District Judge Michael J. Reagan conducted a hearing on the motion on August 10, 2017. On October 17, 2017, Judge Reagan entered a Memorandum Opinion and Order denying Mr. Mora's Motion to Suppress. [Doc. 50]. In so ruling, he rejected the government's argument that the sweep was justified on the basis of officer safety, because the evidence established there were safe havens outside the house where the officers could have interviewed, searched and arrested Mr. Mora without exposing themselves to harm. *Id.* at 11. However, citing *Mincey v. Arizona*, 437 U.S. 385 (1978); *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006); and *United States v. Najar*, 451 F.3d 710 (10th Cir. 2006), Judge Reagan concluded the government had established that officers had reasonable grounds to believe there was an immediate need to protect the lives of the suspected undocumented immigrants.

## II. Applicable Law

Motions to reconsider are proper in a criminal case even though the Federal Rules of Criminal Procedure do not specifically provide for them. *United States v. Randall*, 666 F.3d 1238, 1241-42 (10th Cir. 2011). "A motion to reconsider may be granted when the court has

3

misapprehended the facts, a party's position, or the law." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Specific grounds include: '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Id.* (citing *Servants of Paraclete*, *supra*).

### III. Analysis

Mr. Mora asserts Judge Reagan's decision should be reconsidered in light of *United States v. Bagley*, 877 F.3d 1151 (10th Cir. 2017), which was entered December 18, 2017.

In *Bagley*, the Tenth Circuit stated that protective sweeps are permissible in two situations: "In the first situation, authorities can look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. "In the second situation, authorities can look elsewhere in the house upon specific, *articulable facts supporting a reasonable belief that someone dangerous was in the house*." *Id.* (emphasis added) (internal quotation marks omitted).

The appellate court's statement of law in *Bagley* is not new law. Indeed, in support of its conclusion that the government must present "articulable facts supporting a reasonable belief that someone dangerous was in the house," the Court cited, *inter alia*, *Maryland v. Buie*, 494 U.S. 325, 334 (1990) and *United States v. Carter*, 360 F.3d 1235, 1242-43 (10th Cir. 2004). Thus, to the extent Mr. Mora's motion is based on an alleged change in the controlling law, his argument is unavailing.

Nor can the Court conclude that there is a "need to correct clear error or prevent manifest injustice." *Christy*, *supra*. Judge Reagan, in his decision, found the government had presented ample evidence supporting the agents' claims that they feared injured or endangered

4

undocumented immigrants could be hidden in Mr. Mora's house, to wit:

- a witness at Albertsons saw between 30 and 60 people exit the back of a semi-truck trailer and mill around the parking lot, and the witness saw a mask on the visor in the passenger side of the cab;[1]

- by the time law enforcement arrived, the semi-truck was gone and only 14 of the individuals remained, so between 16 and 46 individuals were unaccounted for;

- none of the individuals had proper documentation;

- when interviewed, the undocumented immigrants were disoriented, and some said they were unaware they were in Albuquerque;

- the undocumented immigrants had been loaded and unloaded by a man who stood behind the door of the trailer and told them not to look back;

- Agents knew that cartels are now involved in human smuggling, that they treat their clients as cargo, and that they have been known to dump dead clients;

- When the tractor-trailer was located at the nearby Walmart, the trailer was empty and agents found no food, water, bathroom facilities or personal restraints, such as seat belts, in the trailer;

- Agents could not account for the whereabouts of the tractor-trailer between the time it was sighted at the Albertsons and the time it was found at Walmart;

- Cartel smugglers have been known to subject the individuals they are transporting to inhumane and life-threatening conditions;

- Smugglers also commonly hold their clients in stash houses, frequently under armed guard, until the time comes to transfer them to their ultimate destination; and

- Mr. Mora's home is not far from the Albertsons and Walmart, and the streets of his neighborhood would accommodate a tractor-trailer. Additionally, it would have been possible for Mr. Mora to transport the undocumented immigrants from the Albertsons parking lot to his house by car.

---

[1] As previously noted, at some point after the decision to arrest Mr. Mora was made, agents became aware that the semi-truck trailer, driven by a man who looked like Mr. Mora, and with a Halloween mask on the passenger-side visor of the cab, had driven northbound through the Las Cruces Border Patrol Check Point located on Interstate 25 on October 27, 2016 at 04:57:43 hours. The information was included in the affidavits in support of the search warrant applications. However, it is unclear from the record exactly when agents obtained this information.

5

[Doc. 50 at 12-13]. Based on the evidence, the Court cannot conclude that Judge Reagan's decision was "clearly erroneous" or that it resulted in "manifest injustice." *Christy*, *supra*. Accordingly Mr. Mora's request for reconsideration must be denied.

## IV. Conclusion

Mr. Mora's Motion to Reconsider the Court's Order Denying Defendant's Motion to Suppress Evidence [Doc. 65] is hereby denied.

ENTERED THIS 8th day of February, 2018.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Devon M. Fooks, AFPD                Norman Cairns
*Attorney for Defendant Mora*       ASSISTANT UNITED STATES ATTORNEY
                                    *Attorney for Plaintiff United States*